IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
GALVESTON DIVISION

| | | |
|---|---|---|
| WILMER BAUDOIN, | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| v. | § | |
| | § | |
| THE HOUSTON EXPLORATION | § | CIVIL ACTION NO. G-06-0512 |
| COMPANY, ENSCO OFFSHORE | § | |
| COMPANY, ENSCO INCORPORATED, | § | |
| CHAPMAN CONSULTING INC., and | § | |
| GRASSO PRODUCTION MANAGEMENT, | § | |
| | § | |
| Defendants. | § | |

## MEMORANDUM OPINION AND ORDER

Pending before the court are Defendant Grasso Production Management, Inc.'s ("Grasso") Motion for Summary Judgment (Docket Entry No. 76), Plaintiff Wilmer Baudoin's Response to Grasso's Motion for Summary Judgment (Docket Entry No. 92), Defendant Grasso Production Management, Inc.'s Reply to Plaintiff's Response to Grasso's Motion for Summary Judgment (Docket Entry No. 93), and Plaintiff Baudoin's Sur-Reply to Grasso's Reply to Plaintiff's Response to Grasso's Motion for Summary Judgment (Docket Entry No. 100). For the reasons stated below, Grasso's motion for summary judgment will be denied in part.

## I.  Background

Wilmer Baudoin was allegedly injured in two separate incidents that occurred while he was employed by Fluid Crane and

Construction, Inc. to assist with repair work on the Eugene Island
331 B, a fixed offshore platform owned by The Houston Exploration
Company ("HEC") and located off the coast of Louisiana.[1]  The first
incident occurred on October 19, 2005,[2] when Baudoin was assisting
with an operation that involved using a crane to lift and move a
personnel basket.[3]  The crane used to move the basket was operated
by an employee of another contractor, Ensco Offshore Company or
Ensco Incorporated (collectively, "Ensco").[4]  According to Baudoin,
the basket was located in a position where the crane operator could
not see the basket.[5]  Baudoin alleges that he was pulling on the
basket when the crane operator unexpectedly began to lift the

---

[1]See Plaintiff's Second Amended Complaint, Docket Entry No. 48
at ¶¶ 10-11; Defendant Grasso Production Management, Inc.'s Motion
for Summary Judgment, Docket Entry No. 76 at 2; Plaintiff's
Response to Grasso's Motion for Summary Judgment, Docket Entry
No. 92 at 2-3.

[2]Plaintiff's Response to Grasso's Motion for Summary Judgment,
Docket Entry No. 92 at 2; Witness Statement (included in
Plaintiff's Response to Grasso's Motion for Summary Judgment,
Docket Entry No. 92 at Exhibit F); Employer's First Report of
Injury or Occupational Illness (included in Plaintiff's Response to
Grasso's Motion for Summary Judgment, Docket Entry No. 92 at
Exhibit F).

[3]Plaintiff's Response to Grasso's Motion for Summary Judgment,
Docket Entry No. 92 at 2; Oral and Videotaped Deposition of Wilmer
Baudoin (Feb. 13, 2008) at 35-38 (included in Plaintiff's Response
to Grasso's Motion for Summary Judgment, Docket Entry No. 92 at
Exhibit A).

[4]See Oral and Videotaped Deposition of Wilmer Baudoin
(Feb. 13, 2008) at 37 (included in Plaintiff's Response to Grasso's
Motion for Summary Judgment, Docket Entry No. 92 at Exhibit A).

[5]Id.

basket with the crane.[6]  This caused Baudoin to slip and fall and land on his right shoulder.[7]  Baudoin alleges this fall resulted in injury to his shoulder and neck.[8]

The second incident occurred sometime in November of 2005.[9] Baudoin was helping several other fellow employees lift a heavy piece of pipe.[10]  During the pipe-lifting operation, the pipe fell, landing on Baudoin's right shoulder.[11]  He alleges that this second incident further exacerbated the injuries to his neck and

---

[6]Id. at 45.

[7]Id. at 45, 58; Witness Statement (included in Plaintiff's Response to Grasso's Motion for Summary Judgment, Docket Entry No. 92 at Exhibit F).

[8]Oral and Videotaped Deposition of Wilmer Baudoin (Feb. 13, 2008) at 58 (included in Plaintiff's Response to Grasso's Motion for Summary Judgment, Docket Entry No. 92 at Exhibit A).

[9]The parties state in their briefs that the second incident occurred on November 4, 2005.  Defendant Grasso Production Management, Inc.'s Motion for Summary Judgment, Docket Entry No. 76 at 2; Plaintiff's Response to Grasso's Motion for Summary Judgment, Docket Entry No. 92 at 3.  None of summary judgment evidence submitted by the parties corroborates that date, however.  Baudoin first testified that the incident occurred around November 23, 2005.  Oral Deposition of Wilmer Baudoin at 81 (June 12, 2007) (included in Defendant Grasso Production Management, Inc.'s Motion for Summary Judgment, Docket Entry No. 76 at Exhibit D).  Later, Baudoin testified that the incident occurred on November 25 or 26, 2005.  Oral and Videotaped Deposition of Wilmer Baudoin (Feb. 13, 2008) at 74 (included in Plaintiff's Response to Grasso's Motion for Summary Judgment, Docket Entry No. 92 at Exhibit A).

[10]Oral Deposition of Wilmer Baudoin at 81-85 (June 12, 2007) (included in Defendant Grasso Production Management, Inc.'s Motion for Summary Judgment, Docket Entry No. 76 at Exhibit D).

[11]Id. at 86.

shoulder.[12]  Baudoin claims that his injuries required surgery and that he will probably no longer be able to obtain employment in a similar role.[13]

Baudoin sued HEC and Ensco on July 31, 2006, for damages sustained as a result of the two incidents.[14]  Baudoin amended his complaint on September 10, 2007, to add defendant Grasso Production Management, Inc.[15]  HEC had contracted with Grasso to provide services on the Eugene Island 331 B, and Grasso employees were present on the platform when Baudoin allegedly sustained his injuries.[16]  Baudoin alleges that Grasso is liable for his injuries because Grasso was responsible for promulgating and enforcing safety policies on the Eugene Island 331 B when Baudoin sustained his injuries, and that Grasso failed to perform those duties.[17]

---

[12]Plaintiff's Second Amended Complaint, Docket Entry No. 48 at ¶ 11.

[13]Plaintiff's Response to Grasso's Motion for Summary Judgment, Docket Entry No. 92 at 3.

[14]See Plaintiff's Original Complaint, Docket Entry No. 1.

[15]See Plaintiff's Second Amended Complaint, Docket Entry No. 48.

[16]See Affidavit of Robert A. Bergeron at ¶¶ 4-8 (included in Defendant Grasso Production Management, Inc.'s Motion for Summary Judgment, Docket Entry No. 76 at Exhibit A).

[17]Plaintiff's Response to Grasso's Motion for Summary Judgment, Docket Entry No. 92 at 1.

## II.  <u>Summary Judgment Standard</u>

Summary judgment is warranted if the movant establishes that there is no genuine dispute about any material fact and that it is entitled to judgment as a matter of law.  Fed. R. Civ. P. 56(c). An examination of substantive law determines which facts are material.  <u>Anderson v. Liberty Lobby, Inc.</u>, 106 S. Ct. 2505, 2510 (1986). Material facts are those facts that "might affect the outcome of the suit under the governing law."  <u>Id.</u>  A material fact creates a genuine issue if the evidence is such that a reasonable trier of fact could resolve the dispute in the nonmoving party's favor.  <u>Id.</u> at 2511.

The movant must inform the court of the basis for summary judgment and identify relevant excerpts from pleadings, depositions, answers to interrogatories, admissions, or affidavits that demonstrate there are no genuine fact issues.  <u>Celotex Corp. v. Catrett</u>, 106 S. Ct. 2548, 2553 (1986); <u>see also</u> <u>Wallace v. Tex. Tech Univ.</u>, 80 F.3d 1042, 1046–47 (5th Cir. 1996).  A defendant may obtain summary judgment based on an affirmative defense if it "establish[es] beyond dispute all of the defense's essential elements."  <u>Bank of Louisiana v. Aetna U.S. Healthcare Inc.</u>, 468 F.3d 237, 241 (5th Cir. 2006).  A defendant may also obtain summary judgment by demonstrating that the plaintiff has failed to make a showing adequate to establish the existence of an issue of material fact as to an essential element of his case.  <u>Celotex Corp.</u>, 106 S. Ct. at 2552.

If the movant makes either of these showings, the burden shifts to the nonmoving party to show by affidavits, depositions, answers to interrogatories, admissions on file, or other admissible evidence that summary judgment is not warranted because genuine fact issues exist. See id. Conclusory claims, unsubstantiated assertions, or insufficient evidence will not satisfy the nonmovant's burden. Wallace, 80 F.3d at 1047. If the nonmovant fails to present specific evidence showing there is a genuine issue for trial, summary judgment is appropriate. Topalian v. Ehrman, 954 F.2d 1125, 1132 (5th Cir. 1992). In reviewing the evidence "the court must draw all reasonable inferences in favor of the nonmoving party, and it may not make credibility determinations or weigh the evidence." Reeves v. Sanderson Plumbing Products Inc., 120 S. Ct. 2097, 2110 (2000).

### III.  Applicable Law

The court has jurisdiction pursuant to the Outer Continental Shelf Lands Act ("OCSLA"). See 43 U.S.C. § 1349(b)(1). "The [OCSLA] provides comprehensive choice-of-law rules . . . ." Demette v. Falcon Drilling Co., Inc., 280 F.3d 492, 495 (5th Cir. 2002). In actions brought under the OCSLA "federal law governs . . . to the extent that there is applicable federal law; however, if there is a gap in the federal law, the law of the adjacent state is used as a gap-filler and becomes surrogate federal law." Bartholomew v. CNG Producing Co., 862 F.2d 555, 557 (5th Cir.

-6-

1989).  See also 43 U.S.C. § 1333(a)(2)(A).  In order for state law

to be applied as surrogate federal law three conditions must be

satisfied:

> '(1)  The controversy must arise on a situs covered by
> OCSLA (i.e. the subsoil, seabed, or artificial
> structures permanently or temporarily attached
> thereto).
>
> (2)  Federal maritime law must not apply of its own
> force.
>
> (3)  The state law must not be inconsistent with
> [f]ederal law.'

Strong v. BP Exploration & Production, Inc., 440 F.3d 665, 668 (5th

Cir. 2006) (quoting Union Tex. Petroleum Corp. v. PLT Eng'g, Inc.,

895 F.2d 1043, 1047 (5th Cir. 1990)).

The events giving rise to this case occurred on the Eugene

Island 331 B, a fixed platform located on the Outer Continental

Shelf adjacent to the coast of Louisiana.[18]  Therefore, it is a

situs covered by OCSLA.  See 43 U.S.C. § 1333(a)(1).  Additionally,

neither federal admiralty law nor federal common law applies.  See

Rodrigue v. Aetna Cas. & Sur. Co., 89 S. Ct. 1835, 1839-42 (1969)

(holding that under OCSLA federal admiralty law does not apply to

accidents occurring on fixed offshore drilling platforms, and

therefore, that state law governs); Fontenot v. Dual Drilling Co.,

---

[18]Plaintiff's Second Amended Complaint, Docket Entry No. 48 at
¶ 10; Defendant Grasso Production Management, Inc.'s Motion for
Summary Judgment, Docket Entry No. 76 at 4-5; Affidavit of
Robert A. Bergeron at ¶ 4 (included in Defendant Grasso Production
Management, Inc.'s Motion for Summary Judgment, Docket Entry No. 76
at Exhibit A).

179 F.3d 969, 977 (5th Cir. 1999) ("[O]ur circuit has consistently rejected attempts of litigants to have 'federal common law' override rules of Louisiana tort law in actions arising on fixed platforms on the Outer Continental Shelf."). The parties have not suggested that applicable Louisiana law is inconsistent with federal law. Accordingly, Louisiana law governs.

## IV. **Analysis**

### A. **Prescription**

Grasso first contends that Baudoin's cause of action against it has prescribed.[19] Under Louisiana law all "delictual actions are subject to a liberative prescription of one year." La. Civ. Code Ann. art. 3492 (1994). Baudoin asserts in his complaint that he was injured as a result of two incidents, the first occurring in late October of 2005 and the second in November of 2005.[20] Baudoin timely filed his Original Complaint against defendants HEC and Ensco on July 31, 2006.[21] Baudoin did not file his Second Amended Complaint to include Grasso as a defendant until September 10, 2007,[22] well beyond the one-year prescriptive period. Thus, on its

---

[19]Defendant Grasso Production Management, Inc.'s Motion for Summary Judgment, Docket Entry No. 76 at 8.

[20]Plaintiff's Second Amended Complaint, Docket Entry No. 48 at ¶ 9.

[21]Plaintiff's Original Complaint, Docket Entry No. 1.

[22]Plaintiff's Second Amended Complaint, Docket Entry No. 48.

face, Baudoin's action against Grasso has prescribed.  <u>See</u> <u>Gary v.</u>
<u>Camden Fire Ins. Co.</u>, 676 So. 2d 553, 555 (La. 1996) ("Because
plaintiff's suit for tort damages was filed more than one year
after the accident, the action has prescribed on its face.").

If an action is prescribed on its face, "the plaintiff carries
the burden of proving that prescription was interrupted, suspended,
or renounced."  <u>Id.</u> (citing <u>Lima v. Schmidt</u>, 595 So. 2d 624, 628
(La. 1992)).  Baudoin contends that prescription was suspended
under the discovery rule,[23] a prong of the equitable doctrine known
as "contra non valentem agere nulla currit praescriptio," or just
"contra non valentem," for short.  <u>See</u> <u>Corsey v. State Dep't of</u>
<u>Corrections</u>, 375 So. 2d 1319, 1321-23 (La. 1979) (describing the
background and evolution of contra non valentem doctrine in
Louisiana, including the discovery rule).

Under this doctrine the one-year prescriptive period does not
begin to run until "the injured party discovers or should have
discovered the facts upon which his cause of action is based."
<u>Griffin v. Kinberger</u>, 507 So. 2d 821, 823 (La. 1987) (citing <u>Lott</u>
<u>v. Haley</u>, 370 So. 2d 521 (La. 1979)).  The Louisiana Supreme Court
has explained that the one-year period does not begin to run upon
only a slight indication that the plaintiff has suffered an injury,
but will commence when the plaintiff has "a reasonable basis to

---

[23]Plaintiff's Response to Grasso's Motion for Summary Judgment,
Docket Entry No. 92 at 4-7; Plaintiff's Sur-Reply to Grasso's Reply
to Plaintiff's Response to Grasso's Motion for Summary Judgment,
Docket Entry No. 100 at 2-4.

pursue a claim against a defendant." <u>Jordan v. Employee Transfer Corp.</u>, 509 So. 2d 420, 423-24 (La. 1987).  The plaintiff will be charged with knowledge of any material facts of which he could have learned had he exercised reasonable diligence.  <u>Herman v. State Farm Mut. Auto. Ins. Co.</u>, 977 So. 2d 41, 45 (La. Ct. App. 1st Cir. 2007) (citing <u>Renfroe v. State ex. rel. Dep't of Trasp. & Dev.</u>, 809 So. 2d 947, 953 (La. 2002)).

Baudoin asserts that he did not learn of Grasso's potential responsibility for his injuries until September 5, 2007.[24]  On that date, Baudoin deposed David Williams, HEC's Manager of Environment, Safety, and Health.[25]  In his deposition Williams indicated that Grasso was responsible for promulgating and enforcing certain safety policies on the Eugene Island 331 B when Baudoin sustained his injuries.[26]  Baudoin argues that it was not until he learned, through Williams' deposition, of Grasso's responsibilities related to safety procedures that he knew or had any reason to know of the facts upon which an action against Grasso could be based.[27]  In

---

[24]Plaintiff's Response to Grasso's Motion for Summary Judgment, Docket Entry No. 92 at 6.

[25]See Oral and Videotaped Deposition of David Williams (Sept. 5, 2007) at cover (included in Plaintiff's Response to Grasso's Motion for Summary Judgment, Docket Entry No. 92 at Exhibit B).

[26]<u>Id.</u> at 17, 27, 29-31 (pages 29-31 included in Defendant Grasso Production Management, Inc.'s Motion for Summary Judgment, Docket Entry No. 76 at Exhibit B).

[27]Plaintiff's Response to Grasso's Motion for Summary Judgment, Docket Entry No. 92 at 6.

response, Grasso contends that Baudoin failed to exercise reasonable diligence to learn of the material facts upon which he bases his suit against Grasso; and therefore, contra non valentem cannot apply to save his claims against Grasso from prescription.[28]

Whether the discovery rule applies in this case is a close question. Moreover, it appears that prescription may have been interrupted for a reason that neither party has addressed. Prescription may have been interrupted under Louisiana Civil Code article 2324(C)[29] or articles 1799[30] and 3503[31] when Baudoin initiated this action against defendants HEC and Ensco on July 31, 2006. <u>See</u> La. Civ. Code Ann. arts. 1799, 2324(C), 3503. <u>See also, e.g.</u>, <u>Wimberly v. Brown</u>, 973 So. 2d 75, 78 (La. Ct. App. 5th Cir. 2007) (holding that timely service on two defendants interrupted prescription under articles 1799 and 3503 as to a third, later-added defendant, who was a solidary obligor with the two original defendants); <u>Marchand v. State Farm</u>, 897 So. 2d 643, 647 (La. Ct.

---

[28]Defendant Grasso Production Management, Inc.'s Reply to Plaintiff's Response to Grasso's Motion for Summary Judgment, Docket Entry No. 93 at 2-4.

[29]"Interruption of prescription against one joint tortfeasor is effective against all joint tortfeasors." La. Civ. Code Ann. art. 2324(C) (1997).

[30]"The interruption of prescription against one solidary obligor is effective against all solidary obligors and their heirs." La. Civ. Code Ann. art. 1799 (2008).

[31]"When prescription is interrupted against a solidary obligor, the interruption is effective against all solidary obligors and their successors." La. Civ. Code Ann. art. 3503 (1994).

App. 1st Cir. 2004) (holding that the plaintiff's timely original petition against three defendants interrupted prescription under article 2324(C) as to two later-added defendants, which were joint tortfeasors with the original defendants). The court, therefore, declines to rule on the prescription issue at this time, and will order the parties to submit supplemental briefs addressing the potential interruption of prescription under article 2324(C) or articles 1799 and 3503 of the Louisiana Civil Code.

**B.  Duty**

Grasso also asserts that it owed no legal duty to Baudoin and, therefore, that it cannot be liable to Baudoin for any alleged negligence.[32]  Under Louisiana tort law "[t]he threshold issue in any negligence action is whether the defendant owed the plaintiff a duty . . . ."[33]  Hanks v. Entergy Corp., 944 So. 2d 564, 580 (La. 2006).  Whether the defendant owed a duty to the plaintiff is a question of law.  Id.

Baudoin does not assert that a statute or Louisiana's tort jurisprudence imposed a tort duty on Grasso.  Instead, he contends

---

[32]Defendant Grasso Production Management, Inc.'s Motion for Summary Judgment, Docket Entry No. 76 at 9-12; Defendant Grasso Production Management, Inc.'s Reply to Plaintiff's Response to Grasso's Motion for Summary Judgment, Docket Entry No. 93 at 5-6.

[33]To recover for negligence in Louisiana the plaintiff must establish five elements: (1) the defendant had a duty to conform his conduct to a certain standard, (2) the defendant breached this duty, (3) the defendant's breach was a cause-in-fact of the plaintiff's injuries, (4) the defendant's breach was a legal cause of the plaintiff's injury, and (5) the plaintiff suffered injury or damages.  Hanks v. Entergy Corp., 944 So. 2d 564, 579 (La. 2006).

that Grasso contractually assumed a tort duty in favor of Baudoin by entering into the Master Service Agreement with HEC.[34] Specifically, Baudoin asserts that paragraph 6.2 of the Agreement imposed a tort duty on Grasso in favor of Baudoin.[35]  This paragraph provides, in pertinent part:

> [Grasso] is responsible for initiating, maintaining and supervising all necessary safety precautions and programs in connection with the work.  [Grasso] shall take all necessary precautions for the safety of all persons and employees on the work site, including Company Group, as hereinafter defined, and comply and cause [Grasso's] employees, agents, sub-contractors, and others entering on [HEC's] premises in the performance of the work or in connection therewith to comply with all of [HEC's] safety rules and applicable provisions of federal, state and local safety laws, rules, regulations, and ordinances to prevent damage or injury to any and all property and persons.[36]

"[I]n some instances, a party's assumption of a contractual duty may create a corollary or incidental tort duty in favor of third persons."  Smith v. State Dep't of Pub. Safety, 620 So. 2d 1172, 1185 (La. Ct. App. 1st Cir. 1992) (citing Glen G. Morris, Developments in the Law 1988-1989: Business Associations, 50 La. L. Rev. 211 (1989)).  The available case law does not, however, explicitly state a rule for determining when a contractual duty will create a tort duty in favor of third parties.

---

[34]Plaintiff's Response to Grasso's Motion for Summary Judgment, Docket Entry No. 92 at 7-9.

[35]Id.

[36]Master Service Agreement at ¶ 6.2 (included in Plaintiff's Response to Grasso's Motion for Summary Judgment, Docket Entry No. 92 at Exhibit C).

One commentator has identified several situations in which Louisiana courts have found that a defendant owed a tort duty to the plaintiff based, at least partially, on the defendant's contractual obligations to a party other than the plaintiff.[37]  <u>See</u> Thomas C. Galligan Jr., <u>Contortions Along the Boundary Between Contracts and Torts</u>, 69 Tul. L. Rev. 457, 520-25 (1994) (describing the various contexts in which Louisiana courts have recognized tort duties in favor of third parties based on the alleged tortfeasor's contractual obligations).  Most of the paradigms identified by Professor Galligan are not particularly analogous to the situation in this case, in which one party potentially has a contractual duty to ensure that others comply with certain safety rules.  But, the court finds some of them to be instructive.

Perhaps the most similar line of cases involves the potential tort liability of inspectors, who are contracted by principals to inspect certain objects or places, to third parties who may later use those objects or places.  <u>See Winget v. Colfax Creosoting Co.</u>, 626 So. 2d 370 (La. Ct. App. 3d Cir. 1993); <u>Morcos v. EMS, Inc.</u>, 570 So. 2d 69 (La. Ct. App. 4th Cir. 1990); <u>State v. Joint Comm'n</u>

---

[37]Such situations include product liability suits by parties not in privity of contract with the product's manufacturer, tort suits by home buyers against home inspectors contracted by the seller, tort suits by construction contractors against architects where both parties separately contracted with the land or building owner, and tort suits by persons examined by doctors who were contracted by the persons' potential future employers to conduct pre-employment physicals.  Thomas C. Galligan Jr., <u>Contortions Along the Boundary Between Contracts and Torts</u>, 69 Tul. L. Rev. 457, 520-25 (1994).

on Accreditation of Hosps., Inc., 470 So. 2d 169 (La. Ct. App. 2d Cir. 1985).  In Joint Commission several renal patients at a state hospital had been injured or died due to excessive levels of aluminum in the water used for their dialysis treatments.  Joint Comm'n, 470 So. 2d at 170.  The state settled with the patients or their survivors and then sued the Joint Commission on Accreditation of Hospitals ("JCAH") for contribution as a joint tortfeasor.  Id. The hospital had contracted the JCAH to inspect and accredit the hospital.  Id.  The court held that the JCAH could not be liable in tort to the injured patients because its inspection contract with the hospital did not "include[] within its scope the prevention of the risk encountered by the dialysis patients to their eventual injury."  Id. at 177.

In Morcos the defendant had been hired by the plaintiff's employer to inspect a crane and certify that it complied with certain federal safety regulations.  Morcos, 570 So. 2d at 70.  The plaintiff was subsequently injured while using the crane and sued the inspection company, among others.  Id.  The trial court granted summary judgment on behalf of the inspection company, and the court of appeals affirmed, reasoning that the defendant inspection company's "contract was to certify that the crane met OSHA regulations.  It was not to make a safety inspection for the benefit of Morcos, an employee."  Id. at 76.  The court noted, however, that the contract might have imposed a duty in favor of

-15-

the plaintiff if it had included a specific stipulation of benefit for a third person.  Id. at 76 n.2.

Winget involved a suit by the widow of a lineman who was killed when the utility pole on which he was working broke and fell on him.  Winget, 626 So. 2d at 370.  She sued the manufacturer of the utility pole and the company that had been contracted by the manufacturer to inspect the pole and certify that it met certain federal regulations.  Id.  The trial court, relying on Joint Commission and Morcos, granted summary judgment for the inspection company.  Id. at 371.  The court of appeals reversed, however, concluding that there were outstanding questions of fact that had to be decided before it could be determined whether the inspection company "had a duty which encompassed the risk to" the plaintiff's deceased husband.  Id. at 372.

Also instructive is the seminal case of Canter v. Koehring Co.[38]  Canter v. Koehring Co., 283 So. 2d 716 (La. 1973).  Canter involved a suit by the widow of a man killed in a crane accident against individual employees of the company that had contracted with Canter's employer to do the construction work.  See id. at 723.  The court reasoned that if the company that had contracted

---

[38]"The seminal case in the area of contract-related tort duties of employees is undoubtedly the 1973 supreme court decision in Canter."  Morris, Developments in the Law 1988-1989: Business Associations, supra, at 212.  See also Galligan, Contortions Along the Boundary Between Contracts and Torts, supra, at 521 (discussing Canter).

-16-

Canter's employer owed a duty to Canter, that duty could have been delegated by contract to the defendant employees via their employment contracts. See id. at 721. The court concluded that "[t]he evidence reflects without substantial dispute" that the defendants had, in fact, been delegated their employer's duties by their employment contracts. Id. at 723.

Together, these cases strongly suggest that determining whether a contract creates a tort duty in favor of a third party is primarily a matter of contract interpretation. Even in the cases in which the courts concluded there was no such duty, the courts did so not because a tort duty cannot be created by contract, but because the courts determined that such a duty was not within the scope of what the particular contracts required. See Morcos, 570 So. 2d at 76 (holding that the contract did not require the defendant "to make a safety inspection for the benefit of Morcos, an employee"); Joint Comm'n, 470 So. 2d at 177 (concluding that the contract did not "include[] within its scope the prevention of the risk encountered"). In this case the court must analyze paragraph 6.2 of the Master Service Agreement between HEC and Grasso and determine whether it could be interpreted to impose a tort duty on Grasso in favor of Baudoin.

Under Louisiana law contracts are to be interpreted by the court as a matter of law if they can be "construed from the four corners of the instrument without looking to extrinsic evidence."

-17-

Bernard v. Iberia Bank, 832 So. 2d 355, 359 (La. Ct. App. 4th Cir.
2002) (citing Peterson v. Schimek, 729 So. 2d 1024, 1029 (La.
1999)).   If the contract is found to be ambiguous, however,
extrinsic evidence may be evaluated to ascertain the intent of the
parties. Commercial Props. Dev. Corp. v. State Teachers Ret. Sys.,
808 So. 2d 534, 540 (La. Ct. App. 1st Cir. 2001) (citing La. C.C.
art. 2045).   The intent of the parties is an issue of fact.   Id.
But "[w]hether a contract is ambiguous or not is a question of
law." Id. (citing Hampton v. Hampton, Inc., 713 So. 2d 1185, 1189-
90 (La. Ct. App. 1st Cir. 1998)).

     Looking only to the text of paragraph 6.2, and not considering
any extrinsic evidence, the court concludes that the contract
provision is not ambiguous.  Paragraph 6.2 imposes on Grasso, in
favor of "all persons and employees on the work site," a duty to
"take all necessary safety precautions . . . ." [39]   It further
imposes a duty on Grasso, in favor of "any and all . . . persons,"
to "comply and cause [Grasso's] employees, agents, sub-contractors,
and others entering on the Company's premises . . . to comply with
all of [HEC's] safety rules and applicable provisions of federal,
state and local safety laws, rules, regulations, and ordinances to
prevent damage or injury . . . ."[40]   At the time he sustained his

---

[39]Master Service Agreement at ¶ 6.2 (included in Plaintiff's
Response to Grasso's Motion for Summary Judgment, Docket Entry
No. 92 at Exhibit C).

[40]Id.

                              -18-

injuries, Baudoin came within the protected class of "all persons and employees on the work site," and/or as "any and all . . . persons."[41]   Grasso therefore owed Baudoin a duty of care as a matter of law.   Accordingly, the court will deny Grasso's motion for summary judgment on the ground that it owed no duty.[42]

## C.    Causation

Lastly, Grasso contends that neither its actions nor inactions were the legal cause of Baudoin's injuries.   Under Louisiana tort law, for a defendant's negligent action or inaction to be the legal cause of the plaintiff's injuries "(1) the defendant's negligence must be a cause-in-fact of the injured person's injuries; and (2) the risk of harm encountered by the injured person must fall within the scope of protection afforded by the duty to others breached by defendant's negligence."   <u>Dartez v. City of Sulphur</u>, 179 So. 2d 482, 484 (La. Ct. App. 3d Cir. 1965) (citing <u>Dixie Drive</u>

----

[41]<u>Id.</u>

[42]Even if paragraph 6.2 were ambiguous the court could not grant summary judgment to Grasso based on the duty element. Baudoin has produced some extrinsic evidence indicating that the parties' intent was to impose the stated duties on Grasso. Specifically, David Williams, HEC's Manager of Environment, Safety, and Health, testified in his deposition that Grasso was the party in charge of ensuring that safety policies were followed on the platform.   Oral and Videotaped Deposition of David Williams (Sept. 5, 2007) at 27 (included in Plaintiff's Response to Grasso's Motion for Summary Judgment, Docket Entry No. 92 at Exhibit B). Therefore, viewing the evidence in the light most favorable to Baudoin, a genuine issue of material fact exists as to the intent of the parties with regard to the imposition of a duty on Grasso.

It Yourself New Orleans Co. v. Am. Beverage Co., 137 So. 2d 298
(La. 1962)).

    1.   Cause in Fact

    Baudoin does not allege that any affirmative action on the
part of Grasso was a cause in fact of his injuries.  Instead, he
argues that Grasso's inaction in failing to ensure that others on
the platform complied with the established safety rules for
conducting a blind crane lift resulted in his injury.[43]  Baudoin has
presented evidence that there was a safety procedure in place on
the platform for conducting blind crane lifts,[44] that the procedure
required that the lift be conducted using either a radio or flagman
to communicate with the crane operator,[45] and that the procedure was

---

    [43]Plaintiff's Response to Grasso's Motion for Summary Judgment,
Docket Entry No. 92 at 3, 7-9.  Baudoin only argues that Grasso
breached the duty imposed on it by the Agreement by allowing the
October 19, 2005, blind crane lift to proceed without following
applicable safety procedures.  See Plaintiff's Response to Grasso's
Motion for Summary Judgment, Docket Entry No. 92 at 7-9.  Baudoin
does not contend that Grasso breached its duty in conjunction with
the second incident in which Baudoin was allegedly injured.  See
id.

    [44]Video Deposition of Robert Andrew Bergeron (Aug. 5, 2008) at
32 (included in Plaintiff's Response to Grasso's Motion for Summary
Judgment, Docket Entry No. 92 at Exhibit E).

    [45]Oral and Videotaped Deposition of Wilmer Baudoin (Feb. 13,
2008) at 73 (included in Plaintiff's Response to Grasso's Motion
for Summary Judgment, Docket Entry No. 92 at Exhibit A); Video
Deposition of Robert Andrew Bergeron (Aug. 5, 2008) at 32 (included
in Plaintiff's Response to Grasso's Motion for Summary Judgment,
Docket Entry No. 92 at Exhibit E).

not followed during the lift that resulted in Baudoin's injury.[46]
This evidence, when viewed in the light most favorable to Baudoin
and assuming that Grasso's duty included ensuring that the
applicable safety procedures were followed for this particular
crane lift, is sufficient to create a genuine issue of fact as to
whether Grasso's inaction was a cause in fact of Baudoin's injury.

    2.   <u>Scope of the Duty</u>

The contract imposes on Grasso a duty to "take all necessary
precautions for the safety of all persons and employees" and to
"comply, and cause [Grasso's] employees, agents, sub-contractors,
and others entering on [HEC's] premises . . . to comply with all"
applicable safety rules and regulations.[47]   The contract limits
Grasso's duties, however, only to "the performance of <u>the work</u> or
in connection therewith."[48]   The term "work" is specifically defined
in the contract in paragraph 3.[49]   Paragraph 3 is entitled "Work,"

---

    [46]Oral and Videotaped Deposition of Wilmer Baudoin (Feb. 13, 2008) at 38, 73-74 (included in Plaintiff's Response to Grasso's Motion for Summary Judgment, Docket Entry No. 92 at Exhibit A).

    [47]Master Service Agreement at ¶ 6.2 (included in Plaintiff's Response to Grasso's Motion for Summary Judgment, Docket Entry No. 92 at Exhibit C).   <u>See</u> <u>supra</u> Part IV.B for the entirety of the applicable text of ¶ 6.2.

    [48]Master Service Agreement at ¶ 6.2 (emphasis added) (included in Plaintiff's Response to Grasso's Motion for Summary Judgment, Docket Entry No. 92 at Exhibit C).   In the same paragraph the Agreement also states that "[Grasso] is responsible for initiating, maintaining and supervising all necessary safety precautions and programs in connection with <u>the work</u>." <u>Id.</u> (emphasis added).

    [49]<u>See</u> <u>id.</u> at ¶ 3.

and reads in pertinent part:  "The work subject to this Agreement shall include any goods, facilities, or services which are requested by [HEC] by oral or written work order, and which are provided by [Grasso] during the term of this Agreement."[50] Therefore, unless the crane operation in which Baudoin was injured constituted "work" -- i.e., it was both requested by [HEC] by oral or written work order <u>and</u> provided by Grasso -- or was "in connection with" such work, Grasso had no duty to ensure it was conducted according to applicable safety procedures.

Baudoin has presented sufficient evidence to create an issue of material fact as to whether the crane operation in which he was injured qualifies as Grasso's "work" or was in connection with Grasso's "work."  Specifically, Baudoin has produced evidence that a Grasso employee, Verges Pierre,[51] summoned him to the office of the company man.[52]  Baudoin testified in this deposition that the company man was named Tony Landry and that he too was a Grasso employee.[53]  Baudoin further testified that the company man, along

---

[50]<u>Id.</u>

[51]None of the evidence presented states that Pierre was a Grasso employee.  Grasso, however, characterizes Pierre as a Grasso employee in its Reply to Plaintiff's Response to Grasso's Motion for Summary Judgment.  See Defendant Grasso Production Management, Inc.'s Reply to Plaintiff's Response to Grasso's Motion for Summary Judgment, Docket Entry No. 93 at 7 n.6.

[52]See Oral and Videotaped Deposition of Wilmer Baudoin (Feb. 13, 2008) at 36 (included in Plaintiff's Response to Grasso's Motion for Summary Judgment, Docket Entry No. 92 at Exhibit A).

[53]<u>Id.</u> at 12-13.

with Baudoin's supervisor, ordered him to participate in the crane operation.[54]   Baudoin has also produced evidence tending to show that Pierre was involved to some extent in actually carrying out the crane operation.[55]

This evidence is sufficient to create a genuine issue of material fact as to whether the crane operation was a service provided by Grasso or was in connection with a service provided by Grasso. Grasso, referring to Baudoin's deposition, contends that Pierre was not involved in the actual carrying out of the crane operation, and that he was only walking by when the accident occurred.[56]   But other evidence, including the report documenting the accident prepared by Mark Kennedy, Baudoin's supervisor, suggests that Pierre was involved in the crane operation to some degree.[57]   Moreover, Grasso does not deny that Pierre summoned

_____

[54]Id. at 35.

[55]See Employer's First Report of Injury or Occupational Illness (stating that "Wilmer Bauboin [sic] and Verges Pierre was [sic] pulling the personal [sic] basket from underneath the rig floor. They picked up one en[d] of the basket not knowing the basket was tied to the grating. Their[sic] was another basket in front of them. They tripped on the basket causing them to fall.") (included in Plaintiff's Response to Grasso's Motion for Summary Judgment, Docket Entry No. 92 at Exhibit F).

[56]See Oral and Videotaped Deposition of Wilmer Baudoin (Feb. 13, 2008) at 45 (Describing the accident, Baudoin stated that "by that time Pierre was coming around the corner. Before he could get to me, he grabbed. It was too late. It was too heavy, fell on me and him both.") (included in Plaintiff's Response to Grasso's Motion for Summary Judgment, Docket Entry No. 92 at Exhibit A).

[57]See Employer's First Report of Injury or Occupational Illness (included in Plaintiff's Response to Grasso's Motion for Summary Judgment, Docket Entry No. 92 at Exhibit F).

Baudoin to the company man's office.   Additionally, Baudoin
testified that he engaged in the crane operation at the order of
the company man, Tony Landry, who was also allegedly a Grasso
employee.[58]  In response to this assertion, Grasso claims only that
Landry was not present on the platform at the time of the
accident.[59]  But Grasso supports this contention only by pointing
out that a Job Safety Analysis log sheet from October 19, 2005, the
date of the crane incident, was not signed by Landry.[60]  This does
not conclusively prove that Landry was not present, nor does it
conclusively prove that he was not a Grasso employee.

The evidence presented by Baudoin is also sufficient to create
an issue of fact as to whether Grasso's involvement in the crane
operation was pursuant to an HEC work order.  Baudoin testified
that the operation was initiated at the request of the company man.
It is reasonable to infer that the company man was carrying out his
responsibilities under an HEC work order.  Moreover, a reasonable
fact-finder could also infer that Pierre's involvement in the crane

---

[58]Oral and Videotaped Deposition of Wilmer Baudoin (Feb. 13, 2008) at 12-13, 35-36 (included in Plaintiff's Response to Grasso's Motion for Summary Judgment, Docket Entry No. 92 at Exhibit A).

[59]See Defendant Grasso Production Management, Inc.'s Reply to Plaintiff's Response to Grasso's Motion for Summary Judgment, Docket Entry No. 93 at 7 n.5.  In this footnote Grasso refers to the alleged company man as "Tony Baudoin," but the court assumes that Grasso is actually referring to Tony Landry.

[60]See Job Safety Analysis (Oct. 19, 2005) (included in Defendant Grasso Production Management, Inc.'s Motion for Summary Judgment, Docket Entry No. 76 at Exhibit H).

operation was at the direction of HEC, or at least in connection with his responsibilities under an HEC work order.

The court concludes that issues of fact exist as to whether the crane operation during which Baudoin was injured constituted "work" or was "in connection with" work, and thus as to whether protecting Baudoin from the risk he encountered during the crane operation was within the scope of Grasso's duties. The court will therefore deny Grasso's motion for summary judgment based on lack of causation.

### V.  Conclusion and Order

Based on the foregoing analysis, Defendant Grasso Production Management, Inc.'s Motion for Summary Judgment (Docket Entry No. 76) is **DENIED** as to its duty and causation arguments. The court reserves judgment as to the prescription ground.

Grasso shall submit a supplemental brief within ten business days addressing whether prescription was interrupted before the expiration of the one-year period pursuant to Louisiana Civil Code article 2324(C) or articles 1799 and 3503. Baudoin shall file a response within ten business days after Grasso files its brief.

**SIGNED** at Houston, Texas, on this 30th day of October, 2008.


_____
SIM LAKE
UNITED STATES DISTRICT JUDGE